IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 26, 2018

FILED

07/12/2018

Clerk of the
Appellate Courts

**STEPHANIE ANN COLE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Cumberland County**
**No. 2014-CR-195   David A. Patterson, Judge**

_____

**No. E2017-02036-CCA-R3-PC**

_____

The Petitioner, Stephanie Ann Cole, appeals the denial of her petition for post-conviction relief. The Petitioner pled guilty to first degree premeditated murder and received a life sentence. The Petitioner sought post-conviction relief on multiple claims, and the post-conviction court denied relief following a hearing. On appeal, the Petitioner argues that trial counsel was ineffective by failing to provide his professional advice regarding the Petitioner's decision to enter a guilty plea. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Richard L. Gaines, Knoxville, Tennessee, for the appellant, Stephanie Ann Cole.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Phillip A. Hatch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

**Guilty Plea Hearing**

The Petitioner was indicted for and pled guilty to the first degree premeditated murder of the victim, Louis Tammaro, receiving a life sentence. At the plea hearing, the

State proffered the factual basis for the Petitioner's guilty plea. The State asserted, through the testimony of Agent Dan Friel of the Tennessee Bureau of Investigation, that on June 20, 2014, the Petitioner's neighbor went to the Petitioner's house after hearing a gunshot. The neighbor saw the Petitioner holding a handgun while in the backyard. The neighbor asked the Petitioner to give her the gun, and the Petitioner complied and told the neighbor "that she had done something horrible." When the neighbor asked what the Petitioner had done, the Petitioner replied she had shot her boyfriend. The neighbor called 9-1-1, and Cumberland County deputies responded to the scene. Upon their arrival, the Petitioner told the deputies that she had shot her boyfriend.

The victim's body was found inside a utility tote, which also contained two pillows, a blanket, a black plastic bag, and two latex gloves. One pillow had a hole through it and was covered in gunshot residue. The victim died from a gunshot wound to the head, a bullet of the same caliber as the handgun taken from the Petitioner was recovered from the victim, and the Petitioner's DNA was found on the handle of the gun. The victim's blood was on the outside of the latex gloves found with the body, and the Petitioner's DNA was on the inside of the gloves. Agent Friel opined that based on his investigation, he believed the Petitioner placed a pillow over the victim's head while he was sleeping and shot him in the head with the handgun.

During an extensive plea colloquy, the Petitioner stipulated to the factual basis for the plea, testified that she understood the rights she was waiving, and stated that she understood she would receive a life sentence. She testified that she did not have any questions about entering her plea and agreed that she believed trial counsel had "done all that he need[ed] to do." The Petitioner also made a statement to the post-conviction court and the victim's family:

> Your honor, I'm aware of what I've done[,] and I am deeply saddened over the circumstances. I would like to say how very sorry I am to the [the victim's] family, my family, the community [in] which I lived and taught, all the students and families who looked up to me and the people who I've let down by my actions.

> I am taking full responsibility and pleading guilty with the hope that there will be some sense of closure for everyone that I have hurt.

The trial court found that the Petitioner entered her plea knowingly and voluntarily and accepted the plea. The Petitioner subsequently filed a petition for post-conviction relief, raising claims that trial counsel was ineffective.

## Post-Conviction Hearing

At the post-conviction hearing, the Petitioner testified that she had a college education and worked for fourteen years as an elementary school teacher. She stated that prior to the date of the offense, she had received treatment for depressive disorder and anxiety. She had complained about auditory hallucinations to her psychiatrist, and at some point, she was diagnosed with obsessive compulsive disorder. She maintained that she was abusing alcohol and "on mushrooms" while also taking prescriptions for Xanax and Prozac. She did not recall much of what occurred on the date of the offense.

After the Petitioner was arrested, she was evaluated by a counselor at the jail and continued to take a prescription for Prozac. She was later transferred to a mental health center, where she took prescription medication for depression and anxiety. She agreed that trial counsel had her evaluated by a mental health professional, but she explained that trial counsel did not discuss the results of the evaluation with her or advise her of possible defenses at trial.

The Petitioner testified that she met with trial counsel on six or seven occasions. She stated that trial counsel did not explain the elements of first degree murder to her, but she later acknowledged that he explained the State would have been required to prove premeditation. She agreed that trial counsel showed her some of the discovery he received but explained that she did not want to see all of it. She stated that although trial counsel was considering a "psychological defense," he did not discuss insanity, diminished capacity, or intoxication defenses with her.

A few days before trial, the Petitioner and trial counsel discussed the possibility of pleading guilty. Trial counsel explained to the Petitioner that if she pled guilty, she would receive a life sentence. She agreed that trial counsel also told her she would receive the same sentence if she were found guilty following trial. She stated that trial counsel never discussed the death penalty with her. Trial counsel "vaguely mentioned aggravators" to the extent that he explained that none would apply to her case.

Trial counsel met with the Petitioner again after they discussed the possibility of pleading guilty. The Petitioner testified that she asked trial counsel what would happen if she changed her mind about pleading, and he responded that "it would be down to crunch time," which the Petitioner understood to mean "there wasn't much time at all to come up with a good defense." The Petitioner stated that trial counsel never told her about any weaknesses in the case and that she believed there were no possible defenses based on what trial counsel had told her. She testified that she "felt a little bit trapped" into pleading and agreed that she felt as though she did not have a choice.

The Petitioner stated that she asked trial counsel "for his professional opinion" regarding the guilty plea, but he responded that the decision was for her to make. She stated that by the time of the guilty plea hearing, she "had lost faith in [trial] counsel," so she felt pleading guilty was "what [she] needed to do." She stated that she did not think she could get another lawyer and did not know she could ask for one. She testified that now that she knew more about her case and possible defenses, she would have gone to trial instead of entering a guilty plea.

On cross-examination, the Petitioner reviewed the transcript from the guilty plea hearing and agreed that she told the trial court during the plea colloquy that there was nothing else she needed trial counsel to do for her case. She agreed that trial counsel filed a motion for discovery and that he reviewed the discovery with her in person but that she did not want to look at the photographs from the crime scene. She agreed that trial counsel discussed filing various pretrial motions and that trial counsel filed a motion to suppress her statements to law enforcement, which the trial court denied.

The Petitioner agreed that she was evaluated by a mental health expert retained by trial counsel. She acknowledged that after the evaluation, trial counsel visited her and explained that in the expert's opinion there were not sufficient mental health issues to support a mental health defense. She agreed that she was aware of this information when she began discussing the possibility of pleading guilty with trial counsel.

The Petitioner acknowledged that she told the trial court that she wanted to enter her plea to take responsibility for her actions. She agreed that she did not dispute the factual basis for her plea and that she understood the rights she was waiving by entering her plea. She further agreed that she was not surprised by the trial court's informing her she would receive a life sentence because trial counsel had already explained the sentence to her weeks before she entered her plea. She acknowledged that she told the trial court in her plea colloquy that trial counsel had explained to her the elements of first degree premeditated murder, any lesser-included offenses, and possible defenses. She agreed that she was of clear mind and not under the influence of intoxicants when entering her plea. She stated that the decision to enter her plea was completely her own.

On redirect, the Petitioner clarified that although trial counsel told her that insanity would not be a viable defense, he did not discuss diminished capacity or intoxication as possible defenses. Based on that, she concluded that she did not have a defense.

Trial counsel testified that he met with the Petitioner prior to the preliminary hearing to discuss the facts that were available at the time. He discussed possible witnesses and defenses with the Petitioner throughout his representation. He met with the Petitioner in person "a least a dozen times" and reviewed with her the discovery he

- 4 -

received, with the exception of "certain parts of the crime scene video that she asked not to see." He discussed the potential witnesses that the State would likely call as well as the witnesses the defense could call. He explained the strengths and weaknesses of the State's case against her.

Trial counsel testified that he determined early in the case that a mental health expert needed to be hired to evaluate the Petitioner. After the evaluation, trial counsel discussed the results with the Petitioner and explained that a diminished capacity defense was not viable. He testified that based on the results from evaluation and his own opinion of the case, the Petitioner had neither an insanity nor a diminished capacity defense.

Trial counsel stated that he discussed filing pretrial motions with the Petitioner and that he in fact filed numerous motions, including the motion to suppress her statements to law enforcement officers. The motion to suppress was heard by the trial court and denied. He did not perceive any search or seizure issues in the case.

Trial counsel testified that after he explained that diminished capacity would not be a viable defense, the Petitioner indicated that she wanted to plead guilty to the indictment. Trial counsel explained the ramifications of pleading and her sentencing exposure. He estimated this conversation occurred at least one month prior to the date of the plea hearing. He asked that the Petitioner allow him to attempt to work out an agreement with the State for a lesser-included offense. After unsuccessful attempts, he explained to the Petitioner that he could not get an agreement for anything less than first degree murder, and the Petitioner was "very adamant" about pleading guilty.

Trial counsel stated that he discussed the plea with the Petitioner "three to four times prior to the actual plea date." He explained that she would receive the same sentence even if she went to trial and was found guilty. He also explained that she would lose her right to appeal, including the right to appeal the trial court's denial of her motion to suppress. He testified that the Petitioner was responsive and that he believed she understood everything throughout her case. He again explained to the Petitioner the elements of the offense, the consequences of pleading, and the procedural aspects of trial.

Trial counsel testified that when the Petitioner decided she wanted to plead guilty to the indictment, he explained the plea form with her. He did not recall her having any questions about the form. He told her to take the weekend to think over the plea again. After the weekend, she still wanted to enter the plea. Trial counsel did not observe anything unusual about her demeanor on the day of the plea hearing. He stated that if he had felt that the Petitioner was under the influence of anything, he would have asked for a continuance and not allowed her to enter the plea.

On cross-examination, trial counsel testified that he had been an attorney for twenty years and had tried three or four murder cases by the time he represented the Petitioner. He testified that he discussed with the Petitioner her drug use at the time of the offense. He explained that he was familiar with intoxication as a defense but did not recall anything in the Petitioner's case that would have substantiated such a defense. He agreed that if he could have established at trial that the Petitioner was on prescription drugs, in addition to mushrooms, alcohol, and marijuana, then intoxication could have potentially been a defense but that it would have been a question for the jury. He agreed that he thought the Petitioner was "out of it" when he first met with her after her arrest. He believed the Petitioner was on suicide watch at the jail for a period of time. He explained that the Petitioner did not appear "out of it" in his later meetings with her.

Trial counsel stated that he encouraged the Petitioner "to sleep on it" before making a final decision regarding the plea. He discussed requesting a continuance of the trial date if she needed more time to make a decision. He stated that when the Petitioner asked for his opinion, he explained that it was her decision to make. He explained that when clients ask what he would do in their situations, his standard response is that the decisions are for the clients to make, not him. He further explained that if he had said something about "crunch time," he would have meant that if the Petitioner was going to plead, it was time to do so, or they needed to continue to prepare for trial.

Trial counsel acknowledged that the Petitioner would have received the same sentence had she been found guilty by a jury. He stated that the State did not seek the death penalty. He said the Petitioner indicated to him that she did not want to put the victim's family through a trial, that she did not believe she could face the victim's family, and that she did not want to go through the trial process.

Following the hearing, the post-conviction court made oral findings that the Petitioner failed to present facts establishing ineffective assistance of counsel by clear and convincing evidence. The trial court noted the extensive plea colloquy conducted at the plea hearing, as well as the Petitioner's statement of remorse and acceptance of responsibility. The court also noted that the Petitioner did not have any defenses and that no defenses were established during the post-conviction hearing. The court stated that trial counsel "gave [the Petitioner] every bit of information that she needed in order to make her decision." A written order denying relief and reflecting the post-conviction court's oral findings was subsequently filed. The Petitioner timely appeals.

## ANALYSIS

On appeal, the Petitioner argues that trial counsel's failure to provide professional advice regarding her guilty plea constituted ineffective assistance of counsel. The State

responds that the Petitioner has failed to show that she received ineffective assistance of counsel. We agree with the State.

To be granted post-conviction relief, a petitioner must establish that his conviction or sentence is void or voidable due to the abridgement of any constitutional right. T.C.A. § 40-30-103. The petitioner has the burden of proving the allegations of fact by clear and convincing evidence. *Id.* § 40-30-110(f); *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). Factual findings by the post-conviction court are conclusive on appeal unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). This court may not substitute its inferences for those drawn by the trial judge, and "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997).

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the accused the right to effective assistance of counsel. To prevail on a claim for ineffective assistance, a petitioner must prove "that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Failure to establish either deficient performance or prejudice necessarily precludes relief." *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011).

To demonstrate deficiency, a petitioner must show "'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland*, 466 U.S. at 687). A petitioner "'must show that counsel's representation fell below an objective standard of reasonableness' guided by 'professional norms' prevailing at the time of trial." *Id.* (quoting *Strickland*, 466 U.S. at 688). On review, counsel's performance is not to be measured by "20-20 hindsight." *Id.* at 277 (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). Instead, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (citing *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999)). The court must presume that counsel's acts might be "'sound trial strategy,'" and strategic decisions are "'virtually unchallengeable'" when made after a thorough investigation. *Id.* (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice, "a petitioner must establish 'a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id*. In the context of a guilty plea, the focus is "'on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.'" *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). A petitioner "'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (quoting *Hill*, 474 U.S. at 59). This inquiry should focus on whether any alleged deficiency affected the outcome of the plea process. *Grindstaff*, 297 S.W.3d at 217. A petitioner is not required to prove that the result at trial would have been more favorable than the results of the plea agreement. *Id.*

Claims of ineffective assistance of counsel in post-conviction petitions are regarded as mixed questions of law and fact. *Id.* at 216. Factual findings made by the post-conviction court are reviewed de novo with a presumption of correctness, unless the evidence preponderates against the court's factual findings. *Id.* The post-conviction court's conclusions of law, however, are reviewed under a purely de novo standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

The Petitioner argues that trial counsel was ineffective by not providing advice about whether to plead guilty to the indictment, despite the fact that the Petitioner was waiving her right to appellate review, forfeiting her chance to be acquitted, and receiving the same sentence she would have received had a jury found her guilty.[1] She asserts that she received no benefit in exchange for pleading guilty. The State responds that trial counsel provided the Petitioner with all of the information she needed to make an informed decision.

The right to effective assistance of counsel applies in all critical stages of the criminal process, including plea negotiations. *Nesbit v. State*, 452 S.W.3d 779, 787 (Tenn. 2014). An attorney is required to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Tenn. Sup. Ct. R. 8, RPC 1.4(b). When considering a plea, "counsel must advise the accused, among other things, of the choices that are available to him as well as the

---

[1] The Petitioner cites *Martha Ann Freeman v. State*, No. M2011-01617-CCA-R3-PC, 2014 WL 1285686 (Tenn. Crim. App. Mar. 31, 2014), *perm. app. denied* (Tenn. Sept. 25, 2014), for the contention that trial counsel's failure to give professional advice regarding the Petitioner's plea constituted ineffective assistance. However, as the State correctly argues, we cannot give this case any precedential value because it has been designated "Not for Citation" by our supreme court. *See* Tenn. Sup. Ct. R. 4(E)(1) ("If an application for permission to appeal is hereafter denied by [the Tennessee Supreme] Court with a "Not for Citation" designation, the opinion of the intermediate appellate court has no precedential value.").

probable outcome of these choices." *Parham v. State*, 885 S.W.2d 375, 384 (Tenn. Crim. App. 1994) (footnotes omitted); *see* American Bar Association Standards for Criminal Justice 14–3.2 ("To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the defendant of the alternatives available and address considerations deemed important by defense counsel or the defendant in reaching a decision."). An attorney, after providing "'competent and fully informed advice, including an analysis of the risks that the client would face in proceeding to trial,'" must abide by the accused's decision to either accept or reject a plea. *Nesbit*, 452 S.W.3d at 787 (quoting *Burt v. Titlow*, 571 U.S. 12, 25 (2013) (Sotomayor, J., concurring)).

Trial counsel testified that after the Petitioner indicated that she wanted to plead guilty, he made several unsuccessful attempts to come to an agreement with the State. When the Petitioner still wished to plead guilty, he encouraged her to take additional time to think about her decision. He explained the elements of first degree premeditated murder, lesser-included offenses, the strengths and weaknesses of the State's case, and possible defenses. He explained that diminished capacity and insanity would not be viable defenses after receiving the results from the mental health expert who evaluated the Petitioner. Trial counsel informed the Petitioner of the rights she would be giving up by entering a guilty plea. The Petitioner does not contest the fact that she was aware she was receiving the same sentence as she would have received had she been found guilty following a jury trial. The Petitioner indicated her motives for pleading were not about the sentence itself, but about avoiding the trial process for the sake of both the Petitioner and the victim's families and about taking responsibility for her actions. This is further reflected in the statement she gave at the guilty plea hearing.

Although trial counsel explained that the decision to plead guilty was for the Petitioner to make when she asked his professional advice on what she should do, trial counsel had provided the Petitioner with all of the information she needed to make an informed decision. The Petitioner's testimony that trial counsel did not explain the elements of first degree murder, lesser-included offenses, and possible defenses was contradictory to both her testimony in the plea colloquy and trial counsel's testimony in the post-conviction hearing. The trial court, by denying the Petitioner relief, credited the testimony of trial counsel, and we will not reweigh such testimony. *See Henley*, 960 S.W.2d at 579. The Petitioner was aware of the rights she was waiving and the sentence she would receive when pleading guilty. She has failed to present facts establishing by clear and convincing evidence that trial counsel was ineffective and is, accordingly, denied relief.

**CONCLUSION**

Based on the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE